Wellman's Adm'r v. Dismukes et al.

H. C. WELLMAN, ADM'R OF HARVEY WELLMAN, Appellant, *v.* DISMUKES AND GLASCOCK, Respondents.

1. *Practice — Amendment — Parties — Trial.* — Where it appears at the trial that one of the parties has assigned all his interest in the matter in controversy to another, the court may amend the record and pleadings by allowing the assignee to be added as a party to the record. (R. C. 1855, p. 1253, ₹ 3.)

2. *Contracts, Executed and Executory — Covenants — Lands — Vendor and Purchaser.* — There is a distinction between the rules which govern the relation of vendor and purchaser before and after the execution of the deed. While the contract remains executory, the purchaser has a right to demand a title clear of all encumbrances and defects. The vendor cannot recover without exhibiting an ability to comply with the stipulations and agreements contained in his covenants. An agreement to make a good and sufficient warranty deed is an agreement for the conveyance of a good title.

*Appeal from St. Louis Circuit Court.*

*Ewing & Holliday*, for appellant.

I. The defense of failure of consideration cannot be set up, as no eviction was shown, and, therefore, no breach of the covenant. (Hoy *et al.* v. Taliaferro, 8 Sm. & M. 727, 241 ; Dennis v. Heath, 11 Sm. & M. 206 ; Rawle, 645, Am. note 1. Even if there was a paramount title in Balthrope, which is not shown, unless there was an adverse possession under it, this is not equivalent to an eviction. (11 Sm. & M. *supra*, p. 218 ; Gust v. Hodges, 2 Dev. 200.) The covenant entered into by Wellman was a covenant of warranty ; there was no covenant of seizin ; the title bond imports nothing more.

II. If there was a defect in the title, it was known to Dismukes, as the evidence clearly shows, and he cannot retain the purchase money or recover what he has paid. His remedy, if he is disturbed in the possession, must be upon the covenant, as in such case he must be considered to have protected himself against the defect by the covenants in the title bond. The presumption is that the covenant was expressly taken for protection against it. The purchaser shall be bound to perform his engagements whenever his knowledge and the state of facts continue to be the same as they were at the time of the conveyance. (Bradford v. Potts, 9

Barr. 37; Juvenal v. Jackson, 2 Harr. 519; Lighty v. Shorb, 3 Penn. 447; 13 Levy & R. 386.)

III. The court manifestly erred in (on its own motion) substituting Glascock as defendant without allowing plaintiff to reply. Such an order at that stage of the case was irregular and improper in itself; but, having been made, plaintiff should have been allowed to plead as to this new party, and to show, if he could, that Glascock was not entitled to a judgment against him.

IV. The defendant having recovered damages for the breach of the covenant (being the amount of the purchase money, with interest), on the ground that Wellman had no title whatever, the grantee is estopped from setting up the deed afterward as a conveyance of the land against the grantor. The grantor, Wellman, or his representatives have the right to enter again, as against the grantee and his assignee or vendee, and hold under their former possession. (Parker v. Brown, 15 N. H. 176, 188.)

*Dryden & Lindley*, for respondents.

WAGNER, Judge, delivered the opinion of the court.

Plaintiff, as administrator of Harvey Wellman, deceased, instituted suit in the Ralls county Circuit Court against the defendant, Dismukes, on two promissory notes made by Dismukes and payable to plaintiff's intestate. It appears from the petition that the plaintiff's intestate sold to the defendant, Dismukes, certain tracts of land described therein, and bound himself by title bond to convey said lands to Dismukes on the payment of the purchase money. The price agreed upon for the land was four thousand dollars, to be paid in three equal annual installments, the first of which was paid; and this suit was brought to enforce the collection of the two deferred payments.

The petition prays for judgment on the notes, and also for the enforcement of the vendor's lien.

Dismukes, in his answer, admits the making of the notes, and the consideration for which they were given, as charged in the petition, but sets up as a defense that, at the time the land was sold to him, the intestate had no right, title, interest, or estate,

whatever, in the said lands, and that his representatives since had acquired none, and that no title could be conveyed by said intestate's representatives on payment of the balance of the purchase money. He further alleged that the whole title in the lands was in one Mrs. Balthrope, a married woman, for life, and remainder in fee, in her seven children, several of whom were minors, and prayed for a recision of the contract and for judgment for the sum paid by him to the plaintiff's intestate. The plaintiff filed a replication to the counter claim or cross bill set up in defendant's answer.

During the progress of the trial, it appeared that one Glascock had bought at sheriff's sale all the interest of Dismukes in the land in controversy, and that after the institution of this suit Dismukes had assigned and transferred to him all his interest in the same, including whatever claim he might have against the estate of the intestate for the money already paid.

After all the evidence was submitted, and before judgment, the court amended the pleadings by making Glascock a party, who immediately entered his appearance and consented to the proceedings.

The court then, sitting as a jury, found that the intestate was not the owner of nor seized of the land described in plaintiff's petition, and in the title bond given by the said Wellman, deceased, to Dismukes at the date of the said title bond, and that neither his heirs nor representatives had acquired any title since; that at the date of the said title bond the title to the real estate was and ever since has been and now is vested in Mrs. Balthrope for life, with remainder to the heirs of her body in fee; that Mrs. Balthrope was the mother of seven children, of whom several were minors, and that neither said Wellman, deceased, nor his heirs or representatives, could convey the title of said real estate, according to the terms of the bond; that the only consideration for the notes sued on was the land, as stated in the title bond, and that Dismukes had paid the amount specified in the answer; that he had abandoned possession of the land, and that Mrs. Balthrope went into possession of the same, and continued in possession, claiming title; that after the commencement of the suit, Glas-

cock had become the owner of the covenants contained in the deed or title bond of the deceased Wellman to Dismukes, and that all the right, title, and interest of Dismukes therein passed to and vested in him, and that Glascock was the owner and entitled to all the money and damages accruing to Dismukes by or in consequence of the inability of Wellman, deceased, or his representatives, to comply with the terms of the title bond and convey the land.

The court then decreed that the notes sued on be set aside, canceled, and held for naught; that the title bond be canceled; and gave judgment in favor of Glascock, and against the estate, for the amount of money paid by Dismukes to Wellman.

It is objected that the court committed error in allowing Glascock to be made a party, and that if he was rightfully made a party no judgment should have been rendered in his favor without giving plaintiff an opportunity to plead or reply to his claim. If the merits of the cause had been in anywise changed by the introduction of Glascock as a party, there might be some force in the objection; but we are entirely at a loss to see what there was to call for any new pleading or replication. The issues presented were not altered. No new evidence was offered or admitted; it was simply developed that Glascock was entitled to the money as the assignee of Dismukes, and his name was ordered to be added to the record in order to make the pleadings conform to the evidence. There was no pretense that Wellman had any defense to make against Glascock which he had not made against Dismukes. It seems to us that the action of the court was warranted by the circumstances of the case, and comes clearly within the meaning of the statute, which provides that during the progress of a trial the court may, at any time before final judgment, in furtherance of justice and on such terms as may be proper, amend any record, pleading, process, entry, return, or other proceeding, by adding or striking out the name of any party, or by correcting a mistake in the name of a party, or a mistake in any other respect, or by inserting other allegations material to the case, or, when the amendment does not change substantially the claim or defense, by conforming the pleading or

Wellman's Adm'r v. Dismukes et al.

proceeding to the facts proved. (R. C. 1855, p. 1253, § 3; Gen. Stat. 1865, chap. 168, § 3.)

It is argued that a failure of consideration cannot be set up, because there was no eviction. There is authority for the doctrine that a vendor of land who has received a deed with covenants of warranty, and been let into possession, cannot, when sued at law on the notes given for the purchase money, set up the defense of failure of consideration without showing an actual eviction. But that principle can hardly be made applicable in this case.

There is a distinction between the rules which govern the relation of vendor and purchaser before and after the execution of the deed. While the contract remains executory, the law recognizes the right of the purchaser to a title, clear of all encumbrances and defects. (Rawle on Covenants, 604.) The vendor cannot recover without exhibiting an ability to comply with the stipulations and agreements contained in his covenants.

In the application of this rule, a difficulty sometimes arises in determining whether covenants are mutual in such a sense that each is a condition precedent to the other, or whether they be dependent or independent. This question must generally be determined in each particular case by inferring, with as much certainty as possible, the meaning and purpose of the parties; from a full survey, the rational interpretation of the whole contract.

The condition in the bond executed by Wellman is as follows: "Now, upon the full payment of the said promissory notes as above, I bind myself, my heirs, and executors and administrators, to make and execute to the said Dismukes a good and sufficient general warranty deed for said lands, as above described." In a very recent case on this question, in the Supreme Court of the United States, where the covenant in the agreement merely stated that the vendor agreed to sell to the purchaser certain property in Chicago, and on the payment of the first installment of the purchase money he would make a deed to the purchaser and take a bond and mortgage for the payment of the balance, it was *held* that where a written agreement for the sale of lands, executed and sealed by the vendor and vendee, binds one party to make a deed for the property, and the other party to pay a certain sum, the cov-

enants are concurrent and reciprocal, constituting mutual conditions to be performed at the same time ; that the vendor in such case is not bound to convey unless the first installment be paid, nor is the purchaser bound to pay unless the vendor is able to convey a good title, free from all encumbrances : *held*, also, that where the words of the covenant, on the part of the vendor, are, that he will "make a deed" for the property, there is a covenant that the land shall be conveyed by a deed from one who has a good title and full power to convey. (Washington v. Ogden, 1 Black, 450.)

There can be no doubt that it was the intention of the parties that a deed should be executed conveying a title to the land when the purchase money was paid. The two acts were to be mutual and concurrent, and the vendor could not meet the measure of his obligation unless he possessed title and was capable of conveying it. The evidence most clearly sustains the finding of the court, that neither Wellman nor his heirs or representatives had any title to the property, nor could they acquire it. There was, then, under any view of the subject, a total and entire failure of consideration, and we think the judgment was right and ought to be affirmed.

Judgment affirmed. The other judges concur.