## RHODA N. LINTON vs. FRANK D. ALLEN.

Suffolk.　March 8, 9, 1888. — June 20, 1888.

Present : MORTON, C. J., DEVENS, W. ALLEN, C. ALLEN, & HOLMES, JJ.

*Vendor and Purchaser — Bond for a Deed — Condition — Payment — Good Title — Delivery of " Properly Executed Warranty Deed " — Evidence — Extrinsic Evidence.*

A bond for a deed recited that the obligor had " bargained and sold " to the obligee certain land, part payment for which was to be in cash and the balance " on three promissory notes payable " in one, two, and three years, with the privilege of anticipating payments, and contained the condition that, if the obligor should deliver to the obligee " a properly executed warranty deed " upon the obligee's " making a demand for the same and fulfilling all the conditions therein stipulated, then this obligation to be void." *Held,* in an action on the bond, that the payment of the notes was a condition upon which the deed was to be delivered; and that the delivery simply of a properly executed warranty deed, without the giving of a good title, would not satisfy the bond.

Evidence of conversations between the parties at or about the time the bond was signed as to the deed and the title, as well as between the obligee and the husband of the obligor, after her death and while he was acting as special administrator of her estate, as to the same, was *held* to be properly excluded.

CONTRACT, against the administrator *de bonis non*, with the will annexed, of the estate of Chloe A. Berry. Writ dated June 22, 1886. The first count of the declaration was upon a bond for a deed, dated October 30, 1882, signed by the plaintiff and the testatrix, the material parts of which were as follows :

" The condition of this obligation is such, that whereas the said Berry has this day bargained and sold unto the said Linton for the sum of four thousand dollars a certain lot or parcel of land situated in the town of Cottage City, county of Dukes County and State of Massachusetts, on a plat known as Oak Bluffs. [Then followed a description of the premises.] And whereas it is agreed by the parties hereto that the said Linton, her executors and administrators, shall pay to the said Berry, her executors, administrators, or assigns, the sum of four thousand dollars, as follows, viz. : one thousand dollars cash ; the balance of three thousand dollars, on three promissory notes payable as follows : one thousand dollars in one year, one thousand dollars in two years, one thousand dollars in three years. The agreement is that the said Berry shall receive all amounts tendered by

the said Linton at any time said Linton may wish, possession to be given March 1, 1883. Now, therefore, if the said Berry, her heirs, executors, administrators, or assigns, shall deliver unto the said Linton a properly executed warranty deed, the said Linton making demand for the same and fulfilling all the conditions herein stipulated, then this obligation to be void, otherwise to remain in full force and virtue."

Trial in the Superior Court, before *Blodgett*, J., who allowed a bill of exceptions which, so far as material, was as follows.

Prior to October 30, 1882, the Oak Bluff Company conveyed the land in question to Mrs. Berry, by a deed containing a condition, a breach of which was to work a forfeiture of the estate and revest it in the grantor, that a dwelling-house to be erected on the land by her should be " used exclusively as a residence for a private family." After the conveyance to her, Mrs. Berry used the house for a boarding-house, and the plaintiff contended that this use was a breach of the condition of this deed. The Oak Bluff Company, however, had neither taken any steps to enforce a forfeiture of the land, nor released it from the condition of the deed.

One Smith, a real estate broker, testified that he had requested Mrs. Berry to give a deed of the land to the plaintiff, who had paid the $1,000 and delivered the notes to her, and that in January, 1883, he wrote to Mrs. Berry at different times, at the plaintiff's request, asking for a title or deed to the property, for the settlement of the claim of the Oak Bluff Company, and for the clearing of the title, before the plaintiff proceeded to make certain repairs on the house, in response to which the husband of Mrs. Berry wrote to him, " At my wife's request, I reply; she says, go ahead and make the improvements contemplated, and she will make it all right"; and, again, " My wife wishes me to say in reply, that she will see that Mrs. Linton has a good title to the place according to agreement." The plaintiff testified that she took possession of the premises under the bond; that she had called upon the defendant after his appointment as administrator and asked him to clear the title and give her the title called for by the bond, to which he made no definite reply; and that she was ready to pay her notes when the title was made satisfactory. Evidence was offered by the plain-

tiff of conversations between the parties, on or about the time when the bond was given, as to the delivery of the deed and the clearing of the title, and also of conversations with the husband of Mrs. Berry, after her death, and while he was acting as special administrator of her estate, about the title to the property; but, upon the defendant's objection, this evidence was excluded. The husband of Mrs. Berry testified, on cross-examination by the defendant, that, in response to the assertion of the plaintiff, " You cannot give a good title," he said, " You will have just the title the bond calls for," and that a properly executed warranty deed of the property had never been withheld from the plaintiff.

The judge ruled that the plaintiff was not entitled to receive any deed of the property until she had paid her notes in full; that she was not entitled to claim a good title to the property, but only a properly executed warranty deed ; and that she could not maintain her action ; and ordered a verdict for the defendant. The plaintiff alleged exceptions.

*F. S. Hesseltine,* for the plaintiff.

*W. Gaston & F. D. Allen,* ( *C. L. B. Whitney* with them,) for the defendant.

W. ALLEN, J.    The first count of the declaration is upon a bond in the penal sum of $4,000, given by Mrs. Berry, the defendant's testatrix, to the plaintiff. The condition recites that Mrs. Berry " has this day bargained and sold to the said Linton, for the sum of $4,000, a certain lot or parcel of land," and that it is agreed that Linton shall pay to Berry the sum of $4,000, $1,000 in cash and " the balance of the $3,000 on three promissory notes, payable as follows," $1,000 each year for three years, and proceeds as follows : " The agreement is, that the said Berry shall receive all amounts tendered by said Linton at any time said Linton may wish, possession to be given March 1, 1883. Now, therefore, if the said Berry, her heirs, executors, administrators, or assigns, shall deliver unto the said Linton a properly executed warranty deed, the said Linton making demand for the same and fulfilling all the conditions herein stipulated, then," etc.    The bond is dated October 3, 1882, and $1,000 was paid, and three notes of the same date for $1,000 each, payable to the order of Mrs. Berry in one, two, and three years, respectively, from March 1, 1883, were delivered.

We think that the payment of the notes was a condition upon which the deed was to be delivered. The plaintiff was to pay $4,000 ; $1,000 in cash, and the balance on notes payable at future times. The condition is not to pay at the time in notes, but on notes at future times. The notes were delivered at the same time as the bond, and unless the payment of the notes was the condition, there would have been none to be performed by the plaintiff; she would have already " fulfilled all the conditions herein stipulated," and would have had a right to demand a deed on the delivery of the bond, without furnishing any security for the payment of the notes. See *Healy* v. *Pfau*, 119 Mass. 589.

The agreement which appears in the condition of the bond is, that Mrs. Berry should sell the land to the plaintiff for $4,000, — $1,000 to be paid down, and $1,000 within one year, $1,000 within two, and $1,000 within three years,— for which she was to give notes payable at three different dates, but with the privilege of anticipating payments, and that possession should be given on March 1, 1883, and the deed should be given upon the payment of the notes. The bond was given upon the payment of the $1,000, and the delivery of the notes to secure the performance of the agreement by Mrs. Berry. Such a contract would not be performed by Mrs. Berry by tendering a deed which did not convey the title to the land; and her inability and refusal to give a good title would excuse the plaintiff from performing the conditions on her part to be performed, and entitle her to recover back the money paid. *Howland* v. *Leach*, 11 Pick. 151. *Swan* v. *Drury*, 22 Pick. 485. *Stone* v. *Fowle*, 22 Pick. 166. *Cook* v. *Doggett*, 2 Allen, 439. *Callaghan* v. *O'Brien*, 136 Mass. 378. *Gormley* v. *Kyle*, 137 Mass. 189. *Delavan* v. *Duncan*, 49 N. Y. 485, 487.

The recital in the condition of the bond, that " the said Berry has this day bargained and sold unto the said Linton," obviously means that Mrs. Berry has contracted to sell; and the contract is recited in the condition. It is argued that the condition of the bond, that Mrs. Berry shall deliver a properly executed warranty deed, shows that her agreement was to deliver a deed, and not to convey a title. But it seems plain upon the face of the instrument that the delivery of the deed was not a separate

and independent matter, but was to be made in pursuance of, and as a part of, the agreement to sell the land. The agreement was, on the part of the plaintiff, to pay the money to Mrs. Berry, and, on the part of Mrs. Berry, to sell the land to the plaintiff by a warranty deed. The payment of the money was the express condition upon which the deed should be given; the ability and readiness to give a title by a deed was the implied condition upon which the money should be paid. If Mrs. Berry had no title to the land, she could not recover on the notes.

The cases cited by the defendant to sustain the ruling of the court at the trial, that the plaintiff was not entitled to claim a good title to the property, but only a properly executed warranty deed, are *Aiken* v. *Sanford*, 5 Mass. 494; *Tinney* v. *Ashley*, 15 Pick. 546; *Gazley* v. *Price*, 16 Johns. 267; *Parker* v. *Parmele*, 20 Johns. 130, 135. Of the New York cases it is sufficient to say that they are overruled. *Burwell* v. *Jackson*, 9 N. Y. 535.

In *Tinney* v. *Ashley*, the plaintiff paid to the defendant the price of seven hundred and fifty acres of land, to be selected by the plaintiff from a larger quantity; and the defendant gave a bond, with the condition that, on being notified of the selection of the land and on the giving up of the bond, he " should execute and deliver to the plaintiff a good and sufficient warranty deed thereof." The fifth and sixth counts of the declaration alleged as a breach of the condition of the bond, that the defendant had no valid or legal title to the land, alleging an entry by the plaintiff upon the land, and an eviction of him. These counts were held bad on demurrer. The plaintiff had paid the purchase money in full, and the defendant had agreed to give a deed of the land as soon as the plaintiff should select it. The court held that the agreement of the defendant was to give a warranty deed, not to convey a valid title, and that the plaintiff intended to rely upon the covenants in the deed to protect him against defects of title. The only authority cited is *Gazley* v. *Price, ubi supra.*

*Aiken* v. *Sanford* was an action on a bond conditioned that the defendant, on the payment of certain notes by the plaintiff, should sell and convey to him, by a good and sufficient deed of warranty, certain lands. The defendant pleaded a tender of a deed on the ninth day of September. The plaintiff replied, that he paid the notes on the seventh day of June, and on the same

day the defendant tendered to him an insufficient deed, which he refused to accept, and that from the time of making the bond until the third day of September the land was encumbered by a mortgage. The court held the replication to be good on demurrer, on the ground that the deed tendered on June seventh was insufficient, and that the tender on the ninth of September was not within a reasonable time after the payment. Afterwards, on a hearing in equity to fix the amount for which execution should issue, it appeared that the notes were paid upon an execution issued upon a judgment recovered in a suit upon them, and that a sufficient deed was tendered in July, and the question arose upon granting the defendant leave to plead anew, to set up the facts thus appearing. It was objected, that the deed was not according to the condition, because at the time of the tender the land was encumbered by a mortgage.

The court overruled the objection in a *per curiam* decision, saying that, " if the deed was of proper form, and regularly executed, and the grantor was seised, so that the land was conveyed by it, the condition was, in this case, performed. But the court observed that they did not mean to determine that in no case these words should be considered as applying to the title. If the money was to be paid on receiving the deed, it might be a reasonable construction, that a good and sufficient title should be conveyed; otherwise the purchaser might part with his money, not merely for the land, but for a lawsuit also. In the present case, however, the money was to be first paid, and the plaintiff might as well sue on the covenants in his deed, as on his bond." The parties and the court regarded the obligation to pay the notes as absolute and unconditional. Judgment had been recovered upon them and they had been paid while the breach of the condition of the bond upon which the plaintiff relied was in existence, though it was cured before the action on the bond was commenced.

We are unable to give such a construction to the bond in suit. The payment of the money and the delivery of the deed upon demand were to be concurrent acts, although the one was expressed to be the condition of the other. The right to demand the deed would arise simultaneously with the payment of the money; and it is the common case of mutual conditions or

concurrent acts, that the refusal to perform by one party will excuse the other, who is not in default, from performance on his part. See *Tinney* v. *Ashley, ubi supra.*

If the notes had been taken as payment for the land, and the contract had been executed on the part of the plaintiff, so that all that remained to do was the giving of a deed by Mrs. Berry, upon demand, the cases cited might be applicable; but upon the construction which we have given to it, it comes rather within the exception suggested in the earlier cases, and within the general rule that an agreement to sell land, and to give a good and sufficient deed of it, means a deed that will convey a good title to the land. See, in addition to the cases cited, *Mead* v. *Fox,* 6 Cush. 199; *Packard* v. *Usher,* 7 Gray, 529; *Washington* v. *Ogden,* 1 Black, 450, 456; *Wellman* v. *Dismukes,* 42 Mo. 101; *Haynes* v. *White,* 55 Cal. 38; *Taft* v. *Kessel,* 16 Wis. 273; *Cunningham* v. *Sharp,* 11 Humph. 116; *Owings* v. *Baldwin,* 8 Gill, 337.

We find no error in the exclusion of evidence. We think, as the case stood, that the plaintiff was not entitled to demand a deed of the property until she had paid or was ready to pay her notes in full; that she was entitled to claim a good title to the property and not a properly executed warranty deed only; and that there was some evidence that she had demanded a deed, and performed the conditions on her part so far as she was required to. 　　　　　　　　　　　　　　　　　　*Exceptions sustained.*